We will hear argument now in our last case of the day, No. 24-2081. Winnebago Tribe of Nebraska v. United States of the Army. Ms. Wright, when you're ready. May it please the Court. My name is Beth Wright and I represent Appellant the Winnebago Tribe of Nebraska. Here with me in the courtroom today are current and former Winnebago Tribal leaders. The District Court should be reversed. NAGPRA's purpose is to provide Indian Tribes with a statutory right to bring home the remains of their own citizens from places they do not belong. NAGPRA provides Indian Tribes additional rights to ensure repatriation is tailored to the unique needs of Indian Tribes. Counsel, I'm sorry to interrupt, but before you get to the merits of your argument, can you just explain to me sort of why we are here? I'm looking at this letter from the Army from December 23, offering to return the remains of Samuel and Edward at the Army's expense in a dignified and respectful manner. There are a bunch of details. So why is there still a justiciable case or controversy in front of us? It seems like the only question is sort of which authority will be used to effectuate this return. Yes, Your Honor. A few points to that. NAGPRA itself gives any person a cause of action for any violation of this chapter, so Winnebago has a right as a sovereign nation under NAGPRA to bring home the remains of its citizens, and the Army has not said it will return the remains to the Tribe itself. It will only return the remains upon the identification of a closest living relative. I thought we were already past that. I thought I read in the briefs that they had taken a very liberal reading of this regulation and were prepared to do it in this case. But you're saying all of this is actually contingent on a condition that can't be satisfied in this case. Yes, Your Honor. Under the Army's process, the Army's process requires two affidavits. I know what the Army's process looks like on writing, but I thought this letter was saying this will happen. But you were saying, no, this is just a letter saying if you satisfy this other condition, we will do this. Yes, Your Honor. And as Winnebago pled in its complaint, it attempted to identify the closest living relative, but because of the circumstances surrounding Samuel and Edward's death, it was unable to determine who that person was. Samuel and Edward died as children without any lineal descendants of their own, and now asking the Tribe to identify who that person is is a challenging task. And NAGPRA not only provides Tribes a right to request repatriation and facilitate repatriation as a sovereign nation, it provides Tribes additional rights that don't appear anywhere in the Army's process. Some of those rights include mandatory repatriation under the Army's process. Return of remains is just discretionary. Some of the additional rights. But those, it seems to me, once the Army says, but we are using our exercise to return the remains to you, it really wouldn't, that wouldn't present a justiciable controversy. But you're saying the Army is not saying that. They have not told you they will return these remains. Yes, Your Honor. Just briefly, the District Court erred in dismissing Winnebago's action because it distorted NAGPRA's plain text and because it violated the standard of review by failing to accept the truth of Winnebago's facts. I have three main points. First is that the District Court's ruling creates a holding or collection barrier to repatriation that has no basis in NAGPRA's plain text. Second, Samuel and Edward's remains are part of a holding and collection. And third, the District Court misapplied Thorpe v. Borough of Thorpe. Well, let me ask you in terms of the breadth of the statute. If the statute is interpreted without the holdings and collections requirement, won't that make Native American remains within federal control subject to disinterment? Not necessarily, Your Honor. If there is no holdings or collections requirement, which is our first theory, that under 3005A4 a tribe doesn't have to show that there is a holdings or collections in order to be entitled to repatriation, a tribe still has to prove cultural affiliation with a specific set of remains and identify a specific set of remains that's in the government's possession or control in order to be entitled to repatriation of those. And so secondly, does the line, such Native American human remains in the statute, refer to those that were eligible to be in inventories or summaries? No, Your Honor. The specific language in 3005A4, which I think you're talking about, is not included upon any such inventories. The text ends there. There's no other language in the statute that says they're not included upon inventories, but they're still subject to the inventory provision. So let me give you this scenario. Obviously, this cemetery is adjacent to the World College, and it has signs about people being able to tour and view the graves and that sort of thing. Maybe another qualifying fact that I can't recall right now. Would that scenario not at least make the remains qualify under the holdings definition, if not the collections definition for disinterment? No, Your Honor. Not the mere availability of a tour makes remains a holding and collection. Makes it. Does make it. Not the sole availability that you can tour a site and see the graves. That's not the only fact that makes remains a holding or collection. What makes these remains a holding or collection is that they were buried at Carlisle without consent of the tribe or the families, and then the government dug them up in 1927 and moved them to their current location, again, without consent of the tribe or the families. And after that, the government has since treated these remains consistent with the ordinary definition of holding or collection. Some of those facts include that the government does use the remains as part of the walking tour, but other facts include that the government has studied these remains through ground-penetrating radar surveys and research reports that the government has called Carlisle Cemetery specifically a repository for the remains. So these human remains are in the grave, right? They are in a grave. They're in the ground, yes, Your Honor. What is your best argument from the statute that it creates any obligation regarding human remains that are still currently buried? Well, Your Honor, the purpose of NAGPRA is to- Well, like in the statute, though. So the statute seems to address two kind of groups of human remains and artifacts. One is human remains that are buried, and the statute, like in 3002, addresses, you know, if they are accidentally discovered on federal land, what is your obligation? If they are excavated with permission, what is the obligation, right? All of the references to human remains that are buried is about unearthing them, if they are discovered, if they are excavated, here's who you don't own, but here's who controls, et cetera. And then the statute in other provisions, the Act, talks about human remains that have already been excavated that are in holdings, in collections, or maybe are otherwise held by these entities not in holdings or collections. Neither of those groups seems to be talking about who controls or any obligation regarding human remains still in the grave. Is that a correct reading of the statute? No, Your Honor. Under 3005, it mandates that when a federal agency or museum has illicit possession or control of Native American human remains and upon a valid repatriation request that the federal agency return those remains to the tribe or the requesting entity. But where's the, I guess I'm just troubled by the fact that when the statute is, when it's talking about buried remains and obligations regarding them, all of the language is, you know, removal, excavation, these sorts of words, and none of that is in 3005. I mean, there would have to be an obligation to first dig up, to first disinter, and not only is, I don't see that in the statute. Well, under 3002, it doesn't say that you can never dig up Native American human remains. It does say that you can dig up human remains if you follow the certain procedural steps. So where's the obligation to do it? Well, there is an obligation to seek a permit under ARFA, under the Archeological Resource Protection Act. Right. If anything, the statute seems to really want to limit that and say we are leaving the remains where they are unless, right, Section C says unless you, it's only permitted if you can satisfy certain requirements. That seems to be communicating a purpose that we are, this statute has nothing to do with human remains buried in a cemetery on federal land. Well, under the Archeological Resource Protection Act permit, a permit is not required if you are complying otherwise with federal law. So we didn't really brief the permit scenario necessarily, but it doesn't mean that you can never excavate Native American human remains only if you do these things under the options provided for obtaining a permit. Right, but our question here is does this statute create an obligation to disinter buried human remains? And where is that obligation in the statute? There is no specific language that says the federal agency must disinter or must do something to return remains, but the fact that 30058 is a mandate on federal agencies to return Native American human remains contemplates that there would be scenarios where they would have to take on different measures to actually return the Native American human remains that they don't have consent to continue possessing. Well, Ms. Wright, tell me how we can interpret the statute to put the remains back in the control of the tribe. Just through 3005A4, Your Honor, under 3005A4, remains not included upon any such inventory are these various scenarios of Samuel and Edward. Samuel and Edward were not listed on an inventory, so this broad language in the statute is contemplating scenarios where remains would not be listed on an inventory, remains would be intentionally left off an inventory, remains wouldn't be subject to the inventory provision. But the inventory provision only applies to holdings and collections, right? Yes, Your Honor. So if there's a cemetery on federal land, it's not covered by the inventory provision, right? Well, because holding or collection isn't defined by the statute, you look to whether, based on the facts, is the government or entity treating these remains as a holding or collection. And so a holding or collection could potentially be a cemetery as it is here, because based on the facts, the government has treated this as a holding or collection by the fact that they moved these remains from their current burial spot to this location in order to build a parking lot. And because they have demonstrated their intent to treat Carlisle Cemetery not as an ordinary cemetery, but as a place that they've called in their own words a tribute to Native Americans, a historic site. And there's the facts in the complaint that discuss how the government would not return remains to tribes when they asked because they wanted to maintain the character of the cemetery. Does that apply to Arlington as a tribute to our service members? The tours are conducted, et cetera. Does the government need to inventory any tribal members buried in Arlington? No, Your Honor. Carlisle is not like Arlington. Carlisle was established because the government dug up these remains without consent of the families and tribes and moved them to build a parking lot. What's the statutory difference? Where do I find that difference in the statute? Well, in the ordinary definition of holding or collection, because based on these specific facts that we have here, that Carlisle is a holding or collection, but these facts do not mirror facts comparable to Arlington. So it's a holding or collection, but Arlington isn't because why? Because the government treats these remains at Carlisle Cemetery as a holding or collection. Help me understand that. How do they treat them at Carlisle that way but not at Arlington National Cemetery? Because of the lack of consent. There was no expectation that Samuel and Edward would die at Carlisle and remain at Carlisle forever, that they would be moved. So the definition of holding or collection involves lack of consent to be in said holding or collection? Well, it's presuming that the government has acquired the remains somehow or has collected or obtained the remains somehow and is using them in the character that makes them property or makes them something that the government or museum can study or is using for an exhibition. So it's based on those specific facts of holding and collection. And what's helpful is in Thorpe, the court talks about holding or collection and it says that holding or collection means something that the government is holding or collecting for a purpose other than serving as an original burial site. And so at Carlisle, we have two different scenarios where Samuel and Edward's remains are not their original burial site and have never been their original burial site because there is the lack of consent from the tribe and the families. I see my time is up. Thank you. Thank you. We have some time on rebuttal. And Ms. Roundtree, we'll hear from you. Good morning, Your Honors, and may it please the court. The threshold issue in this case requires that the court interpret Section 3005A.4 to determine the full scope of criteria for human remains that qualify for repatriation under that provision. Now, this court has recognized that to determine the plain meaning of a statutory provision, the court doesn't look just to the language of the provision itself. It also looks to the context of where the language appears and the broader context of the statute as a whole. Now, that principle is particularly important in this case for two reasons. First, one of NAGPRA's purposes is to provide for the protection of Native American graves, to protect them from disturbance and protect their contents from being disinterred. But does that really apply here? It's not as though anyone – these are burials without consent. There was no Native American burial. These kids are kidnapped, dumped in a grave after they die at the government's hands, and then moved so that they can pave over the graves with a road. Do you think Congress's point was, like, we really need to preserve that setup? No. Well, Congress, ultimately, this statute is to preserve graves. So notwithstanding how the burial might have occurred, it's so that the graves aren't disturbed. So, for example, someone just can't come along and say, I want to take these remains on the road and show them to everyone so disinter them. It's to protect the graves so that if they are disinterred, it's for a reason that's consistent with the statute. So while the Congress also provides for the protection of the graves, it also provides for the repatriation of Native American items. But in keeping with that objective to protect graves, Congress allows for repatriation only under specific and limited circumstances. Now, there are three interrelated sections in NAGPRA that address those limited circumstances, and importantly, they do so sequentially. In Sections 3003, 3004, and 3005, Congress sets forth a sequential process that certain museums and federal agencies must follow for the repatriation process to occur. Now, Section 3005A4 at issue here is the last of the steps in that sequence. And what that means for purposes of statutory interpretation is that Section 3005A4 does not exist in a vacuum. Rather, it builds upon and is substantively dependent on the preceding steps in the repatriation process, namely 3003 and 3004. So therefore, 3005A4's criteria for human remains, which is what the issue is about here, cannot be determined by looking at that provision in isolation. The criteria for human remains of 3005A4 must be interpreted building on the criteria for human remains that's already been defined in Section 3003. So if we focus on just the two provisions that regard human remains, those are 3003 and 3005. Well, maybe she misunderstood my question, but the district judge ruled that the remains at Carlisle Cemetery did not qualify as a holding or collection under the statute. That limitation really frustrates the intent of the statute under these circumstances, where there's no consent and there's a reburial. I mean... Well, Your Honor, I appreciate your point, except the statute says nothing about in terms of this repatriation and these three steps which govern repatriation about consent. What it's talking about now, it has specific... For example, I was about to get to Section 3003, which... Before you do that, maybe you can address it. Had the district court found that this was a holding or a collection, then their repatriation would be simple, would it not? If the government found that these remains were in a holding or a collection... And so my question is insofar as a holding or a collection, I mean, those are common words and you can go to a dictionary and get a definition of a holding. And when it talks about some of the things that can happen is for public benefit, like a tour and that kind of thing, where the graves are out there for people to read about it and see the graves, et cetera, doesn't that get into a position where the tribe can repatriate those? Again, going back, we have to focus on the provisions that speak to repatriation because that's what's being sought here. They've sought repatriation under... But I thought your whole position is the way you are reading Section 30054, it can only be repatriated if it's part of a holding or a collection.  And Judge Floyd is saying, great, why is this not part of a holding? So I don't see how going back to your textual statutory argument addresses that. Well, it's just that 3003 is where holding and collection, that describes the universe. In Section 3003, it describes the statutory universe of remains that are subject to the repatriation process. That's where we begin. That's step one in the repatriation process. And in Section 3003, that's where it says holdings or collections over which the federal government has possession or control. Great. That's our starting point. Okay, I actually disagree with that, but that's where Judge Floyd wants to meet you. So why is this not within that provision as part of a holding? Going to the dictionary and regulatory definition of holding or collection, it's the gathering or accumulation of objects for a specific purpose or reason. Those are the definitions. If you look at both the dictionary definition and the regulatory definition. The regulation doesn't say specific purpose. It says any purpose. And I have to say, you made that mistake several times in your brief, and I thought you were very close on the duty of candor. It does not say specific purpose. It says the opposite.  Okay. Okay, well, for a purpose. It says any purpose. Any purpose or reason. Therefore, there must be a purpose or reason associated with the gathering and accumulation. And here, there's nothing alleged in the complaint that says that the government gathered or accumulated these remains for purposes that are in any way consistent with the definitions. So if tomorrow the government disinterred these remains and put them in a glass case, you would say they are not part of a collection or a holding because that's not why they were originally gathered or accumulated. That's a separate issue. Anything that's interred after the passage of the statute, disinterred. But, Jess, it would still not fall within the definition of a holding or collection in your view because that only applies if the original purpose was to. Well, I'm just saying in this case, I'm starting first with the original purpose, and I'm not saying original is in a definition. I'm saying here, because we have remains, I guess. But they're now part of a historical tour. It's like an outside museum. The remains, which are at issue here, are not displayed. There is no showing of the remains. There is no exhibition of the remains. There is no display of the remains, and the public is not given access to the remains. It's the cemetery, which is now located on the military barracks. So if individuals, if we go with the allegations in the complaint, if individuals are on the barracks, there is a cemetery in front of them, and the military has simply said a fact, which is this is a cemetery, which holds students who used to be enrolled in the Carlisle School. That doesn't speak to how gathering occurred, if there was gathering. It doesn't say that the government accumulated these remains for purposes of displaying them, because indeed they're not used. Does that go to the point that, I mean, how does one gather or accumulate human remains? You have to disinter them, right? The remains, I mean, this is a grave. This is a grave site. The remains become accumulated or gathered by disinterring them, and then you have them and can collect or hold them. But the statute just seems to say, it seems to talk about human remains in a grave in very different terms, right, that they are not held or possessed by someone until they are unearthed. Is that a correct approach to the statute? Well, those are different provisions. You're speaking to 3002, which goes to ownership. We're talking about here now what, well, to back up. Well, I think I'm trying to interpret what you were saying, that you were saying no one can look at the remains when they visit the cemetery. No one can, you know, and I think I agree with you in the sense that it's not the original purpose, right? Why were these children brought to the school? They died there. Why were their graves moved, et cetera? But the question instead is have they been, have the remains been accumulated? Have they been, and the only way to get the remains is to disinter them. Well, it hasn't been done. They haven't, the remains have not been accumulated. But museums, for example, do accumulate remains. And they, for example, preserve them and they display them. And if they haven't displayed them immediately, they put them in airtight locations away from the light so they are preserved and conserved so they can be studied at some future time or exhibited. That's not been done here. What was done was when the students passed away, they were buried. They were interred. There is no gathering. There is no process associated with it. Then they were disinterred. Then they were disinterred. And they were moved to another location where they were again interred. They were buried. They were not displayed. They were not shown. They are now in a cemetery. None of that is consistent with gathering objects for the purpose of researching or showing or studying them. They have, it's, nothing has been done. And the Army has had no purpose. And the complaint alleges no purpose of the original burials or the secondary that was for purposes of exhibition. The relocation took place in 1927. Whatever has been alleged now in terms of what's happening in the recent history at the barracks is simply that there's a sign in front of the cemetery. There's not an allegation of how this gathering or accumulation allegedly occurred. And there's not a purpose. There's nothing in the complaint that says that the purpose in 1927 was to exhibit these remains. Nothing associated with what has happened with these remains thus is consistent with any of the definitions of holding or collections. But I just ask the court to understand that we are trying to explain and follow the statutory languages, which is simple as they said. It's a repatriation process that's set forth in 3003, 3004, and 3005. Of course, 3005 says not included on an inventory. And we can read in, inventory means inventory of holding or collection. But your argument is asking us to interpret the not to mean not included on the inventory but should have been, right? Not included on an inventory but is in a holding or collection. It doesn't even need, you don't even need to finish that awkward sentence about not included in such an inventory. What's important about that provision in A4 is that there are two categories of remains, one for which cultural affiliation has been established and one for which the remains are not included on any such inventory. What's important about both of those is that they're tied to the inventory provision. Congress didn't say remains for which there's a cultural affiliation and then everything else. It tied it to the inventory. Both are tied to the section 303 inventory, which makes sense because this is a sequential process. Museums and cemeteries have to do an inventory for certain remains. That becomes the universe of remains with which we work. Section 304 says for objects, not human remains, you do a summary. And then 3005 harkens back to each one. 3005 harkens back to the inventory in section 3003. Ms. Wright says these children died buried in 1927 and they can't produce the affidavits of the next of kin. How are they ever going to be able to repatriate the children under your interpretation? Those are entirely separate. The statute is one thing and what's being asked for return under the Army's regulations, which is separate and apart from NAGPRA, from the statute, that's separate. And the Army has said if you don't want to take the NAGPRA statutory route, there's a regulatory route you can choose. If you want remains returned to you. And that's the one that requires the signature of the closest relative. If that's the Army regulation, they can't comply with it, so they have to go through the statute. Well, your honor, both the statute and the regulations have certain requirements and conditions. And if an entity can't fulfill that, that's something I can't speak to. But the regulation is trying to prevent, for example, just anyone saying I want those remains. I'm not a relative, but I want the remains. And I do not disagree with that. That would be a wholesale problem for the United States. But in this particular case, what I was trying to figure out, well, here's a cemetery that's been advertised as the wrong word. But it's out there for people to view and encouraged to see that the children that were in this school system back in the late 1800s and 1900s, they died, they're buried here, the tribe wants them back. Two things. There are two ways they can get them back, either by the statute, and Congress has just simply put in conditions and limitations and criteria. And that's what we're stuck with. And the Army has no authority to disregard what's in the statute. In terms of the regulations, it's an option that the tribes can seek. I would just like to say- Can I- Go ahead. I don't want to cut you off. Finish your point, and then I'll come back. I'd just like to say that there's no allegation in the complaint, though, that there's any affirmative sort of encouraging people to come and look at the cemetery. But I also offer that what- I thought, doesn't the complaint allege that it's like on the website or something, that the cemetery offers visitors a glimpse into the unique past of the United States and Native American history? I mean, I feel like that is inviting people to come look at the graves. We accept the allegations as they are, but what I offer is what the Army is doing is acknowledging that on its barracks, there is a cemetery where these children are located. It can be that the Army just takes the sign down, but it most certainly is not- This is here on the 12b-6, so as Judge Harris pointed out, why is that sufficient to get by the 12b-6 motion as to- The 12b-6 is purely on the pleadings. So why did that allegation get them by the 12b-6 motion? Why that allegation- Why does the allegation that she read to you not get them by the 12b-6 motion? Well, in part, it's simply because it's a naked assertion, and this Court has recognized in Cortez that a naked assertion that's devoid of further factual enhancement isn't entitled to credibility. But let's just assume that what they say is properly pled. The point is that the government is simply acknowledging the presence of these remains, and in many ways- I shouldn't speak personally, but I think it's a good thing that the government acknowledges that they're there. The other options we ignore. We ignore that they have existed. We ignore where they are now. But there is nothing in the complaint that establishes that either in the first instance, when these children originally died, that their remains were gathered and accumulated for the purpose of exhibition or research or study, and there's nothing in the complaint that establishes when they were relocated that the government did anything but just inter them again. Can I take you back to that act? Because we are on 12b-6, which would seem to say, you know, only if the statute- if there's no way to win, right? Does the act say anything about the control or who has control of buried human remains? Not for purposes of repatriation. I mean anywhere. Anywhere in the act. Well, Your Honor, you were- Is it saying who has a right to control buried, still buried human remains? Still buried. I do not- I didn't see anything. I mean there's provisions about if remains are excavated, if they are discovered, which has a regulatory definition, which means excavated without permission. If remains are disinterred, then there's a provision that explains who has control of that. There's detailed provisions about who has a right to possess those or control those. And then other statutes or other sections of the statute have to do with remains in, like we've been talking about, holdings and collections, right? Which, you know, have- they are held by a museum for the reasons we've been talking about. I didn't- and it explains who can control those, who can possess them, who has a right to request to have them back. I didn't see anything in the statute about who has the right to control human remains that are still buried in the ground. I don't know of any such provision, and it may likely be because that speaks to, if you will, a cemetery in which individuals are interred. Well, it's silent, right? And if Congress is silent about something, we presume that they had nothing to say about it, right? And if the statute's silent, it doesn't create an obligation. Well, I mean, I think that your colleague's response, and I do want to give you a chance to respond to this, is it's covered by 3005A because the remains are possessed and controlled by the federal agency, and that what a- the way this is supposed to work is under- let me make sure I get this right- under 3005A1, those are cases where remains have been disinterred and are part of a holding or collection now, and in those cases, the burden is on the government or the museum. Do an inventory, your burden. Inventory it, try to figure out cultural affiliation, and give the appropriate notifications. And if one and two don't apply for whatever reason, including they're not part of a holding or collection, then now the burden is on the tribe, and under four, they have to come in and establish cultural affiliation, and at that point, they get repatriated to the tribe. Why isn't that what the statute says? Well, under 3005 in its entirety addresses the universe of human remains that are subject to repatriation, and that's establishing 3004. Wait, it's- I'm sorry, just say that again. 3005 in its entirety applies to what? Speaks to the universe of human remains that's already been defined by 3003 and 3004. Why do- I don't see that. That's- if you look at 3005A1, A2, and A4, all speak to either section 3003 or 3004. Oh, yeah, right. But I don't understand that that to me doesn't answer the question. A says, and I understand you think the heading is wrong, we should ignore the heading, but A does say this thing speaks to human remains and objects possessed or controlled by federal agencies and museums. Sometimes the burden is on the person or the agency or museum that has these remains as part of a holding or collection, inventory it, figure out cultural affiliation, and make notifications, and then under 4, as I read 4, it's just saying when subsection 1 and 2 are inapplicable, now the burden is on the tribe, the tribe has to come forward, show cultural affiliation, and at that point the remains are repatriated. I don't- I mean, I understand your argument that this is- you have a different reading, but this doesn't strike me as like a model of clarity or disambiguity going your way, especially because you do have to say the heading is wrong. When Congress said what this speaks to-  We've never said the heading was wrong. Okay, then how come it seems to say it covers all objects possessed or controlled by federal agencies and museums, all human remains? That is indeed what the heading says, but this court has acknowledged that what's in a heading doesn't limit the actual text of the statute. What I said is wrong. So the question is- Inartfully drafted. It should have said holdings and collections. Fine. So the question still- the court has to recognize that nothing in the text of A4 speaks to possessions or possession or control. So the question becomes- and the government doesn't dispute that possession and control is- Just so I truly don't quite understand what you're saying about subsection 4, would your argument be different if subsection 4 had simply said something like in all other cases or where subsection 1 is inapplicable, then Native American human remains shall be expeditiously returned where the requesting Indian tribe can show cultural affiliation. Does your argument depend on the fact that they actually said the words not included on an inventory rather than where section 3003 is inapplicable? Well, it would be much clearer, and we couldn't rely on section 3003 if Congress said section 3003 is inapplicable. It's just that Congress clearly harkened back to 3003 and defined human remains in A4 only in terms of the inventory in section 3003. It doesn't say that. It just says they're not included on an inventory. In an inventory. What inventory is Congress speaking of? The inventory in section 3003? The inventory that didn't get done because they weren't part of a holding or collection. It doesn't say the inventory wasn't done, but it still harkens back to 3003. We can't extricate 3003 from the interpretation of A4. Well, of course you can't, because the obvious point, I think we all agree that where 3003 is not applicable, like as part of what Congress is saying, you're saying that Congress is specifying that the reason it's not applicable is because it should have been on an inventory, but it wasn't. I'm not saying that. I don't think Congress is saying that it's inapplicable. If Congress was saying section 3003 is inapplicable, it most certainly would have said that because the only reason we have an inventory to speak of in 3005 is because the inventory is required as part of the repatriation process pursuant to section 3003. And the only point I'd like to make about the heading, I understand the headings there, and we're not disputing that part of the definition of criteria for remains that qualify for repatriation includes possession and control. But it's not because we drag it from the heading. It's because it's in section 3003. It's because section 3003 says holdings and collections over which a federal agency has possession or control. It's a package, if you will, of criteria, and as I said, it's the universe of criteria that apply. So if 3005A4, this little clause about not on an inventory, if we interpret that clause to, without saying it in as many words, to actually mean and all cemeteries where remains are still buried, right? That's what we're doing. We're reading that to mean all remains, or if that's what your opponent wants to do, is to include cemeteries. Then we would have to go through back to 3002C, right? Because Congress specifically limited the intentional removal from or excavation of Native American cultural items, which includes remains in the definition. Removal of such items is permitted only if, and then they lay out four requirements. Right? And so you have to, obviously you have to remove, you have to intentionally remove or excavate those remains before you can repatriate them. So you seem upset. I'm asking something that I think you're going to want to agree with. I'm just going to give you the answer before you respond. I'm baffled that, I mean, we have these requirements that we would have to go through, is my point, for human remains that are still buried, that these requirements don't apply to excavated remains and cultural objects, because they're already out, right? But if we're going to interpret this clause in 3005A.4 to kind of backdoor in any cemetery without consent, then we have to apply 3002C. That is a really complicated question. Do you understand at all what I'm saying? I believe I do not. That's fair. Any non-poker face where I'm shooting a motion is because I, as I understand, and I just realized C was cut off, but 3002 goes to ownership, and it goes to a particular time frame, which is after the passage of the act. Right. Well, 3002A is about anything that's excavated or discovered after the act. Right? And that's what you would be doing. You would be excavating these children's remains after the act.  Right? And then C says you cannot intentionally remove remains from the ground unless you do these four things. It has requirements for that. That would apply here, wouldn't it? I'm so sorry. I cannot speak to that because the title of this is ownership, and this doesn't speak to repatriation as I understand it. As I said, I understand that process to be the three sections I've spoken to. But just like kind of practically, right, you can't repatriate human remains unless you disinter them? Well, yes. Okay. And Congress is limited when they can be disinterred. Yes. Thanks. Sorry. All right. Well, we have taken you way over your time. Apologies. And Ms. Wright, you have a few minutes for rebuttal. Thank you, Your Honors. I just have a few brief points. First is that NAGPRA was enacted to address a specific problem. And that problem was that it was federal agencies and museums who were deciding what could be done with Native American human remains when it should have been the lineal descendants or the Indian tribe. Here, the federal agency buried the remains without consent, dug up the remains without consent, and reburied the remains without consent of any of the families or the tribe. And NAGPRA was enacted to ensure that Native American human remains could be returned to the tribes. In those scenarios, not just because returning remains is important, but because returning remains allowed Indian tribes to bury the remains of their relatives according to specific customs and traditions. And by federal agencies' possession and control of remains, this necessarily meant that Indian tribes and lineal descendants were denied the ability of providing their relatives' remains the dignity and respect of a proper burial. And that's what Winnebago seeks here, the return of Samuel and Edward, so they can finally be laid to rest at Winnebago. Let me follow up one other thing. We do know from which tribe these children came. And we do know they went to the school. And we do know they died there. And we know they're buried where they're buried. Yes, Your Honor. Can I give you a chance to address Judge Rushing's concern, I think, with your position, that if we read 30054 to include buried remains or remains in cemeteries, that would trigger 3002 and its requirements for disinterment. Do you want to address that? Sure, Your Honor. I can briefly address that. The requirements under 3002 for disinterring Native American human remains simply are that it be done in consultation with the tribe, that the remains be given to the tribe with the closest cultural affiliation who states a claim for the remains, and that proof of consultation is given. And so there's nothing in 3002 that conflicts with an obligation to return remains under 3005. It just strikes me as odd in the way that the whole act hangs together, that there are these separate sections about human remains in graves and limits on disinterment, requirements for what to do if they are discovered or excavated, and then there are separate provisions about remains that are held by museums, right, in a holding or collection. That whenever Congress is talking about human remains in graves, it is first mentioning excavation, removal, disinterment, and there's no provision that creates an obligation to do that. The overriding principle seems to be we're not doing that. If that happens by accident or happens with a permit, here's who owns it. Here's who controls, possesses. But the way that Congress is talking about remains in graves is pretty different from the way it's talking about remains that have already been disinterred and are on display in museums. And if they meant to kind of hide in the mouth hole of this clause in 3005, this significant obligation to dig up the cemeteries, it seems like they would have mentioned that. I see my time is about to conclude. May I briefly respond? Feel free to respond. Thanks, Your Honor. When Congress was enacting NAGPRA, it was responding to a problem that there were 100,000 to 2 million Native American human remains that were possessed or controlled by federal agencies that belonged to the tribes' millennial descendants. And those were not graves, right? It was just the breadth that there were potentially millions of Native American human remains who had not been returned to tribes where they belonged. And so Congress could not specifically delineate every single scenario by which remains that should be returned to tribes, the process by which they should be returned to tribes. It just required mandatory repatriation if a tribe can prove certain requirements, which Winnebago has proved here. Thanks. Thank you. Thank you. We would like to greet you if you will come up to the bench, and then we can adjourn court for the day. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Pamela A. Harris, Allison J. Rushing, Henry F. Floyd